# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

CLAYTON GOINS,            )
                          )
        Plaintiff,      )
                          )
v.                        )    Case No. CIV-14-42-RAW-SPS
                          )
CAROLYN W. COLVIN,        )
Acting Commissioner of the Social  )
Security Administration,  )
                          )
        Defendant.      )

## REPORT AND RECOMMENDATION

The claimant Clayton Goins requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for benefits under the Social Security Act. The claimant appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons discussed below, the Commissioner's decision should be REVERSED and the case REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work

which exists in the national economy[.]" *Id.* § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term substantial evidence has been interpreted by the United States Supreme Court to require "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The Court may not reweigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court must review the record as a

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. *Id.* §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if his impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), he is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that he lacks the residual functional capacity (RFC) to return to his past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account his age, education, work experience and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born on August 25, 1967, and was forty-five years old at the time of the administrative hearing (Tr. 23, 116). He has a twelfth grade education and past relevant work as an oil field worker and pastor (Tr. 18, 149). The claimant alleges inability to work since December 3, 2010 because of a stroke that affected his brain, short term memory problems, double vision, mood swings, and emotional instability (Tr. 148).

## Procedural History

The claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, on December 15, 2010. His application was denied. Following an administrative hearing, ALJ David Gutierrez found that the claimant was not disabled in a written opinion dated September 10, 2012 (Tr. 11-20). The Appeals Council denied review, so the ALJ's written opinion is the final decision of the Commissioner for purposes of this appeal. *See* 20 C.F.R. § 404.981.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the ability to perform a limited range of light work as defined in 20 C.F.R. § 404.1567(b), *i. e.*, that he could lift and carry up to twenty pounds occasionally and ten pounds frequently, sit for up to six hours and stand or walk for up to six hours in

an eight-hour workday, with normal breaks, and could occasionally push/pull and perform foot controls. He further limited the claimant to occasionally climbing ramps but never ladders; occasionally stooping, kneeling, crouching, and crawling; frequent bilateral overhead reaching; frequent bilateral reaching, handling, fingering, and feeling; avoiding cold/heat, moving machinery, unprotected heights, and open flames; and no visual or communicative limitations (Tr. 14). Additionally, he found that the claimant would be limited to simple, routine, repetitive tasks which could be done frequently in a work environment free of any fast-paced production requirements and involving only simple work-related decisions, which means low stress, which the ALJ defined as having only occasional decision-making, occasional changes in the work setting, and occasional interaction with co-workers and the public, *i. e.*, brief, infrequent, and superficial contact (Tr. 15). He further found that the claimant would be able to respond to usual work situations and changes in routine work setting, maintain concentration for two-hour periods over an eight-hour period with routine supervision, and complete a normal workday without excessive interruptions from psychologically or physically based symptoms (Tr. 15). The ALJ concluded that even though the claimant could not return to his past relevant work, he was nevertheless not disabled because there was work he could perform, *i. e.*, cafeteria attendant, price marker, and motel housekeeper (Tr. 19).

## Review

The claimant contends that the ALJ erred: (i) by failing to properly evaluate his RFC, (ii) by failing to properly evaluate his credibility, and (iii) by failing to fully

develop the record. With regard to the first contention, the claimant argues that the ALJ failed to properly account for his need for a low stress environment, post-stroke memory issues, impaired ability to concentrate, need for a sit/stand option, and recurring headaches and migraines. The undersigned Magistrate Judge agrees that the ALJ did not properly assess the claimant's RFC, and the decision of the Commissioner should be reversed.

The ALJ found the claimant's severe impairments were status post stroke that affected the reticular formation of his brain, problems with short-term memory, obesity, anxiety, and depression (Tr. 13). On December 3, 2010, the claimant suffered a stroke and was hospitalized at Sparks Regional Medical Center. He was diagnosed with encephalopathy secondary to acute stroke of the right occipital infarction and bilateral thalamic infarction, as well as hypertension, dyslipidemia, obstructive sleep apnea, morbid obesity, and metabolic syndrome (Tr. 249, 282). He was transferred to HealthSouth Rehabilitation Hospital on December 13, 2010 and physically progressed well but had significant continuing problems with impulsivity, was quite childlike in his demeanor, and unrealistic in expectations (Tr. 294, 310). As a result, he was transferred to Neuro Restorative Timber Ridge on December 21, 2010, for long-term brain injury rehabilitation; his prognosis at the time was guarded secondary to the long-term neuropsychiatric effects of his stroke (Tr. 294). On admission at Timber Ridge, notes reflect that the claimant had continued to experience difficulties with ambulation,

communication, comprehension, short-term memory, concentration, problem solving, safety judgment, and high residential and consumer activities (Tr. 355).

The claimant was discharged from Timber Ridge on March 10, 2011. On discharge, the claimant's case manager Tommie Davis stated that the claimant "would like to transition back to work, however at this time employment is not recommended" (Tr. 372). She continued, however, indicating that the claimant had improved in all functional areas, that he had minimal to no physical deficits, and his primary physical deficit related to endurance, but that he continued to experience problems with decreased speed of information processing, vision, short-term memory, use of higher executive skills, and with generalized use of compensatory tools and strategies. Thus, Ms. Davis indicated that the claimant "would experience issues with successfully returning to work at this time" (Tr. 372). More specifically, the claimant's physical therapy discharge summary indicated that the claimant could lift and carry twenty and forty-pound boxes without loss of balance, could maneuver around obstacles and in crowded tight spaces, and could go for a minimum of twenty minutes on both the treadmill and the stationary bike. They recommended that the claimant continue his exercise and conditioning, and avoid climbing ladders or up on chairs to reach things (Tr. 374). Occupational therapy discharge notes indicated that the claimant had met all his initial goals, was independent with his ADLs, had improved grip strength, was within the functional limitations for range of motion, and his visual motor/perceptual skills had improved significantly. He was cautioned, however, to beware of mental fatigue, take rest breaks as needed, do

activity in moderation, and use energy conservation techniques to prevent exhaustion, decreased attention to tasks, and increased safety risk (Tr. 375). Speech-language pathology discharge notes indicate that the claimant generally demonstrated improvement, but that limitations persisted in applications requiring some higher executive functions and mental endurance, and that fatigue, distractions and perseverative thought processes during problem solving all influenced the generalization of his expressive skills in social settings (Tr. 376).

On May 10, 2011, consultative examiner Theresa Horton, Ph.D., conducted a diagnostic interview and mental status examination. Upon examination, she noted that the claimant became mentally tired quickly, that his affect was congruent and expressive, that he had appropriate judgment and fair insight (Tr. 383). She assessed him with major depressive disorder, recurrent, mild to moderate, and cognitive disorder, NOS, mild, noting his December 2010 stroke, and Axis IV of finances, employment, and access to medical care (Tr. 383). Her prognosis was that the claimant appeared capable of understanding, remembering, and managing simple and most complex instructions and tasks, but that he may have difficulty persisting on task for periods of two hours (Tr. 384). She further indicated that he appeared capable of adequate social and emotional adjustment into occupational and social settings, and that the claimant appeared motivated to return to work and would be a good candidate for vocational rehabilitation (Tr. 384).

Citing the Timber Ridge Discharge information, particularly Ms. Davis's statement that the claimant retained minimal to no deficits from a physical standpoint, a state reviewing physician found the claimant could perform light work, with occasional climbing (ramps/stairs/ladder/rope/scaffolds), balancing, and stooping (Tr. 405). As to the claimant's mental impairments, Dr. Janice Smith, Ph.D., reviewed the evidence and concluded that the claimant had mild degrees of limitation in activities of daily living and maintaining social functioning, but moderate difficulties in maintaining concentration, persistence, or pace, and her analysis indicated that the claimant had regained a significant part of his executive functioning (Tr. 399-401). Dr. Smith also completed a mental RFC assessment, finding the claimant was moderately limited in the ability to understand and remember detailed instructions, carry out detailed instructions, and interact appropriately with the general public (Tr. 385-386). She concluded that the claimant could perform simple and some complex tasks, relate to others on a superficial work basis, and adapt to a work situation (Tr. 387).

Following his release from Timber Ridge, the claimant was treated by Dr. Jonathan Clark, DO, largely for GERD, hypertension, depression, anxiety, and paranoia. Dr. Clark prescribed the claimant Celexa, who reported on August 17, 2011, that he cut it in half because the medication made him feel tired (Tr. 418). On October 25, he reported that the Celexa seemed to have helped, but that he continued to have symptoms and had no energy (Tr. 421).

In his written opinion, the ALJ extensively summarized the claimant's testimony and medical records. In discussing the opinion evidence, the ALJ thoroughly summarized the evidence related to the claimant's stroke and subsequent rehabilitation, as well as Dr. Horton's assessment and Dr. Clark's treatment records; however, he failed to provide any analysis or assign any weight with regard to any of the medical evidence of record (Tr. 15-18). He then gave "substantial weight" to the state physician opinions, finding they were "well supported by the evidence of record" (Tr. 18).

"An ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional. . . . An ALJ must also consider a series of specific factors in determining what weight to give any medical opinion." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) [internal citation omitted] [emphasis added], *citing Goatcher v. United States Department of Health & Human Services*, 52 F.3d 288, 290 (10th Cir. 1995). The pertinent factors are: (i) the length of treatment relationship and frequency of examination; (ii) nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Watkins v. Barnhart*, 350 F.3d 1297, 1300-01 (10th Cir. 2003), *citing Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th

Cir. 2001). The ALJ faithfully summarized the statements from Timber Ridge regarding the claimant's physical improvements, but did not discuss the cautions regarding mental fatigue, the need to take rest breaks and conserve energy due to increased safety concerns when he became fatigued. *See, e. g., Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) ("An ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability."), *citing Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004) and *Hamlin*, 365 F.3d at 1219 (10th Cir. 2004). *See also Briggs ex rel. Briggs v. Massanari,* 248 F.3d 1235, 1239 (10th Cir. 2001) ("Although the ALJ need not discuss all of the evidence in the record, he may not ignore evidence that does not support his decision, especially when that evidence is 'significantly probative.'"). This was a significant omission here because the limitations regarding concentration, persistence, and pace directly impact a claimant's ability to perform work. In any event, it was clearly error for the ALJ to implicitly reject these opinions without explaining why. *See Hamlin*, 365 F.3d at 1215 ("An ALJ must evaluate every medical opinion in the record[.]"). *See also Martinez v. Astrue*, 422 Fed. Appx. 719, 725 (10th Cir. 2011) ("To be sure, the ALJ may have had his reasons for giving portions of Dr. LaGrand's opinion 'great weight,' but then disregarding other, probative portions of her opinion. However, before doing so, the ALJ was required to discuss why he ignored this evidence.") [internal citations omitted].

Because the ALJ failed to properly evaluate the treating and consultative opinions contained in the record, the decision of the Commissioner should be reversed and the

case remanded for further analysis by the ALJ. If this results in adjustments to the claimant's RFC, the ALJ should then re-determine what work, if any, the claimant can perform and ultimately whether he is disabled.

## Conclusion

The undersigned Magistrate Judge hereby PROPOSES a finding by the Court that correct legal standards were applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The undersigned Magistrate Judge thus RECOMMENDS that the Court reverse the decision of the Commissioner and remand the case for further proceedings. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 6th day of March, 2015.

_____
**STEVEN P. SHREDER
UNITED STATES MAGISTRATE JUDGE**